IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CRAIG GABALDON,**

    **Plaintiff,**

v.                                                                       CV. No. 23-00035 JCH/SCY

**NEW MEXICO STATE POLICE,**
**KEVIN SMITH,**
In his individual capacity,
**KURTIS WARD,**
In his individual capacity, and
**JOHN DOES 1 through 4,**

    **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendants' New Mexico State Police, Officer Kevin Smith, and Lieutenant Kurtis Ward ("State Defendants") *Motion for Sanctions for Spoliation of Evidence* **(ECF No. 43)**. The Plaintiff, Craig Gabaldon, filed his response **(ECF No. 57)** and State Defendants replied **(ECF No. 63)**. Having considered the motion, briefs, arguments, applicable law, and otherwise being fully advised, the Court concludes that the motion should be granted.

    **I.**    **BACKGROUND**

        **a.**    **January 29, 2021, Arrest**

On January 29, 2021, New Mexico State Police Officer Kevin Smith observed Mr. Gabaldon riding his motorcycle northbound on Carlisle Boulevard in Albuquerque. *See* Dash Cam Video, at 00:42-00:52. Officer Smith observed Mr. Gabaldon make a wide right turn onto eastbound Candelaria Road, crossing the double yellow lines into the westbound lane before

correcting back into the proper lane. *See* Defs.' Mot. for Sanctions 2, ECF No. 43. Officer Smith then noticed Mr. Gabaldon rapidly accelerate on Candelaria Road and used his radar to confirm that Mr. Gabaldon was traveling 78 miles-per-hour in a 35 mile-per-hour zone. *Id.* Officer Smith caught up to Mr. Gabaldon after Mr. Gabaldon made a right turn onto Adams Street. *See* Dash Cam Video, at 00:53-1:51. Officer Smith then turned on his vehicle's emergency lights. *See id.* Mr. Gabaldon proceeded to turn into a driveway, dismount his motorcycle, and walk towards the residence. *Id.* At this point, Officer Smith exited his vehicle and verbally commanded Mr. Gabaldon to stop. *See* Lapel Video, at 1:55-2:23. Mr. Gabaldon complied. *Id.* As Mr. Gabaldon walked back towards Officer Smith, Officer Smith observed him remove his gear, including a jacket, and throw it in the open window of a pickup truck parked next to the motorcycle. *See id.* Officer Smith asked Mr. Gabaldon several times to move away from the vehicle and residence with him so the two could talk; Mr. Gabaldon did not respond. *See id.* at 2:27-3:38. Officer Smith informed Mr. Gabaldon that he observed Mr. Gabaldon speeding and driving into the wrong lane. *See id.* Officer Smith asked Mr. Gabaldon for his name and Mr. Gabaldon refused to share. *See id.* During these interactions, Officer Smith observed that Mr. Gabaldon smelled of alcohol, had bloodshot eyes, and had slurred speech. *See* Defs.' Mot. for Sanctions 2. Officer Smith then asked Mr. Gabaldon if he would submit to a field sobriety test but Mr. Gabaldon refused. *See* Lapel Video, at 4:10-5:10.

Based on these observations and Mr. Gabaldon's conduct, Officer Smith attempted to arrest Mr. Gabaldon for driving under the influence. *Id.*; Defs.' Mot. for Sanctions 2. Mr. Gabaldon resisted arrest, but finally Officer Smith with the help of Lieutenant Kurtis Wald who had arrived on the scene, secured Mr. Gabaldon on the ground. *See* Lapel Video, at 4:10-5:10. Mr. Gabaldon

was placed under arrest for allegedly driving under the influence of alcohol. *See* Defs.' Mot. for Sanctions 2.

### b. Post-Arrest

Mr. Gabaldon filed a complaint in state court on April 26, 2022. *See* Notice of Removal Ex. A, ECF No. 1. State Defendants removed the case to this Court on January 12, 2023. *Id.* In Mr. Gabaldon's Complaint, he alleges that the actions of State Defendants constituted violations of his First, Fourth, Fifth, and Fourteenth Amendment rights, defamation, and malicious prosecution. *See id.* Ex. A, at 5. As relevant to this motion, Mr. Gabaldon alleges that Officer Smith only stopped him because he was wearing a motorcycle jacket decorated with markings and patches from the Bandidos Motorcycle Club (hereinafter "Bandidos" or "Club") on it. Deposition Transcript of Craig Gabaldon, 108:10-109:25.

Litigation ensued. State Defendants filed a motion to compel discovery on June 30, 2023. *See* Mot. to Compel, ECF No. 23. The following interrogatory (in relevant part) was disputed:

> **INTERROGATORY NO. 14:** Please provide a list of each and every motorcycle club, association, organization, or entity in which you are affiliated, associated, or a member. Please provide the following: A. The name(s) of the motorcycle club, association, organization, or entity; B. The purpose(s) of the club, association, organization, or entity; C. Any symbols, markings, or other visual representations that identify the club, association, organization, or entity . . . . *Id.* Ex. A, at 6.

The parties litigated this motion throughout the summer of 2023: Mr. Gabaldon filed a Response on July 17, 2023, and State Defendants replied on July 31. 2023. *See* Pl.'s Resp., ECF No. 24; Defs.' Reply, ECF No. 26. The Court granted the motion on September 12, 2023, as to the above portion of State Defendants' Interrogatory No. 14. *See* Order 6, ECF No. 29. It found that a central issue in this case would likely be why Officer Smith stopped Mr. Gabaldon and the reasonableness of force used on him. *Id.* Therefore, Mr. Gabaldon's membership in the Bandidos

and his display of that membership on his clothing is relevant as to how Officer Smith perceived the situation. *Id.*

However, in July 2023—the same month the parties were briefing the motion to compel discovery—Mr. Gabaldon returned the jacket and corresponding patches that he was wearing on the night of his arrest to the Bandidos. *See* Deposition Transcript of Craig Gabaldon 8:2-22; 10:17-21; 11:3-6; 148:24-149-25. On October 11, 2023, State Defendants served upon Mr. Gabaldon an Amended Notice of Video Deposition Duces Tecum of Plaintiff. *See* Certificate of Service, ECF No. 39. The Amended Notice requested that Mr. Gabaldon bring with him to the deposition the following items:

> (1) The jacket with 'Bandidos' patches, referred to as 'colors,' worn during the time of the events described in the cause of action. (2) Any patches, pins, or other attachment associated with the Bandidos' motorcycle club no longer attached to the jacket during the time of the events described in this cause of action. (3) Any other symbols, patches, pins, clothing, clothing attachments, clothing accessories worn by plaintiff during the time of the events described in this cause of action. *See* Defs.' Mot. for Sanctions Ex. B, at 2.

At the deposition, Mr. Gabaldon informed counsel that he returned the requested items to the Bandidos in July 2023, about a year after he brought this case, and while the parties were actively engaged in the dispute over discovery. *See* Deposition Transcript of Craig Gabaldon 8:2-22; 10:17-21; 11:3-6; 148:24-149-25. He stated that he had left the Bandidos to pursue a more Christian life and to spend more time with his family, and he was required to return these items to the Club after leaving. *Id.* at 147:14-148:7, 149:24-25. He stated that it was impossible to get the items back as the Club likely burned them after Mr. Gabaldon returned them. *Id.* at 11:4-6.

### c. Motion for Sanctions

State Defendants filed the motion for sanctions after learning that these items had been destroyed. In their motion, State Defendants assert that the fact that Mr. Gabaldon returned these

items to the Bandidos constitutes spoliation of evidence. *See* Defs.' Mot. for Sanctions 4. State Defendants contend that these items are the crux of Mr. Gabaldon's claims—that is, that he was stopped by Officer Smith in the first instance because he was wearing these clothing items. *See id.* at 3-4. Additionally, Mr. Gabaldon was on notice not only of the litigation when he returned the items but also the State Defendants' motion to compel discovery which, among other things, asked for "Any symbols, markings, or other visual representations that identify the [motorcycle] club, association, organization, or entity." *Id.* at 7; Defs.' Mot. to Compel 6. State Defendants contend that this spoliation is prejudicial because without it they are unable to fully examine the basis of Mr. Gabaldon's claims. *See* Defs.' Mot. for Sanctions 4. As such, State Defendants ask that the Court dismiss Mr. Gabaldon's claims, or in the alternative, allow State Defendants to present an adverse inference jury instruction as sanctions for Mr. Gabaldon's spoliation. *See id.*

In response, Mr. Gabaldon asserts that any prejudice State Defendants suffered is negated by the fact that they have photographs of the clothing that Mr. Gabaldon was wearing at the time of the incident. *See* Pl.'s Resp. 1-2, ECF No. 57. Mr. Gabaldon states that he was not on notice to retain these clothing items because he knew that the State Defendants had videos and pictures of him wearing the items at the time of the incident. *See id.* at 2. Further, he argues that he was required to return the items to the Bandidos in order to leave the Club to "engage in a more Christian path in life." *Id.* at 3. Finally, Mr. Gabaldon contends that any spoliation that may have occurred was not intentional and therefore does not warrant dispositive-like sanctions such as dismissal or adverse inference jury instructions. *See id.* at 4.

## II. LEGAL STANDARDS

### a. Spoliation

Putative litigants are obligated to preserve evidence when they have notice that the evidence is relevant to litigation or when they should have known that the evidence may be relevant to future litigation. *See Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1294 (D.N.M. 2016) (citing *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). This duty to preserve evidence arises when potential litigation becomes "imminent." *U.S. ex rel. Baker v. Cmty. Health Sys., Inc.*, No. 05-cv-279, 2012 WL 12294413, at *3 (D.N.M. Aug. 31, 2012) (citing *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009)). "Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *Id.* To prevent spoliation, a party must "suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents" as soon as the party reasonably anticipates litigation. *See Browder*, 187 F. Supp. 3d at 1294-95 (*quoting Baker*, 2012 WL 12294413, at *2). The Tenth Circuit has held that this "litigation hold" applies to tangible evidence, beyond just records or documents. *See Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912, 1998 WL 68879, at *7 (10th Cir. Feb. 20, 1998) (affirming district court's imposition of sanctions on party for losing damaged aircraft landing gear).

Counsel for each party has an important responsibility to help prevent spoliation—they must ensure that the parties preserve relevant evidence, including by taking affirmative steps to monitor compliance, understand how relevant evidence will be stored, and continually ensure that the party is appropriately preserving it. *Browder*, 187 F. Supp. 3d at 1295. Ultimately, however, the duty to preserve evidence rests on the party. *See id.*

b. **Sanctions for Spoliation**

"Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" *Turner*, 563 F.3d at 1149 (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citation omitted)). In deciding whether sanctions are appropriate, courts generally consider the following two factors to carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of prejudice the other party sustained. *See Browder*, 187 F. Supp. 3d at 1295.

The degree of culpability of the spoliating party is an important factor when considering what kind of sanction to impose. If the "aggrieved party seeks an adverse inference [or dismissal of a plaintiff's complaint] to remedy the spoliation, it must also prove bad faith." *Id.* at 1296; *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015). Bad faith requires "some showing of willful destruction of evidence." *Browder*, 187 F. Supp. 3d at 1300 n.6. Accordingly, "[m]ere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997). Negligence can, however, support an imposition of lesser sanctions. *See Turner*, 563 F.3d at 1149; *Browder*, 187 F. Supp. 3d at 1295-96 (lesser sanctions may be imposed "even where evidence was lost or destroyed due to negligence, so long as the party seeking sanctions can show it suffered prejudice and the other side was on notice that the evidence should be preserved"). "Federal courts possess the inherent powers necessary 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases,' including imposing appropriate sanctions." *Helget v. City of Hays, Kan.*, 844 F.3d 1216, 1226 n.6 (10th Cir. 2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). And sanctions for spoliation may "be designed to promote accurate fact

finding by the court or jury." *U.S. ex rel. Baker v. Cmty. Health Sys., Inc.*, No. 05-cv-279, 2012 WL 12294413, at *3 (D.N.M. Aug. 31, 2012).

**III.    ANALYSIS**

Here, it is evident that Mr. Gabaldon caused the spoliation of relevant evidence when he intentionally returned the Bandidos jacket and patches to the Club in July 2023. As the plaintiff in this case, Mr. Gabaldon was fully on notice of the litigation. *See id.*; *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006) (affirming district court's finding that plaintiff was on notice once it knew litigation was imminent). While this fact alone establishes that Mr. Gabaldon was on notice of the litigation, it is also worth noting that the parties were engaged in a dispute about discovery requests—requests that included discovery of Mr. Gabaldon's Bandidos gear—when he returned the relevant evidence to the Club.

Next, the Court must determine whether Mr. Gabaldon was aware of the relevance of the evidence when he returned it to the Club. *See Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1294 (D.N.M. 2016). The Court finds that Mr. Gabaldon was aware, or should have been aware, that this evidence was relevant to the litigation given that it is the basis of his claims in his case. Specifically, he argues that he was stopped in the first instance by Officer Smith because he was wearing a Bandidos jacket with Bandidos patches on it.

Mr. Gabaldon claims that he was not on notice that this evidence was relevant because the State Defendants have pictures and videos of the clothing he was wearing on the night of the arrest. *See* Pl.'s Resp. 2. However, Mr. Gabaldon does not state when he became aware of those pictures and videos or whether he was aware of the quality of those pictures and videos and their usefulness to State Defendants. If he only found out about the pictures and videos after returning the items to the Bandidos, or if he knew they existed but knew they were of poor quality before returning the

items, then this argument would be futile. But regardless of what Mr. Gabaldon knew about the pictures and videos, he still had an obligation to preserve all reasonably relevant evidence as soon as he decided to bring the litigation. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003). He was on notice that this evidence should have been preserved and the existence of pictures and videos of the evidence does not negate his responsibility. Accordingly, because he was on notice of the litigation and because he knew or should have known that these items were relevant, Mr. Gabaldon caused the spoliation of them when he returned them to the Bandidos to be destroyed in July 2023.

Because Mr. Gabaldon caused the spoliation of relevant evidence, this Court must next determine whether sanctions are appropriate. To do so, the Court must first determine whether State Defendants were prejudiced by the spoliation of this evidence. State Defendants assert that they are prejudiced by not having access to the jacket and patches because they are unable to fully examine the basis of Mr. Gabaldon's claim that he was pulled over by Officer Smith because he was wearing these items. *See* Defs.' Mot for Sanctions 7. While Mr. Gabaldon argues that the State Defendants are not prejudiced because they have pictures and videos of the clothing items Mr. Gabaldon was wearing that night, State Defendants note that the pictures and videos are of poor quality. *See* Defs.' Reply 5. To be sure, Mr. Gabaldon himself commented on the poor quality of several pictures of the clothing shown to him at his deposition. *See* Deposition of Craig Gabaldon at 153:8-155:2. And the dash cam video from when Officer Smith first notices Mr. Gabaldon riding on his motorcycle is not clear enough to show whether the jacket and patches were visible at this point. *See* Dash Cam Video, at 00:42-1:51. State Defendants are prejudiced by the spoliation of this evidence not only because they cannot inspect the physical items to confirm they had Bandidos

9

markings on them but also because the jury will not be able to evaluate them to determine whether Office Smith would have been able to see these markings from his police car as alleged.

But the sanctions requested by State Defendants here—an adverse inference jury instruction or dismissal of Mr. Gabaldon's claims—are only appropriate if the spoliator acted in bad faith. *See Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015); *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1300 n.6 (D.N.M. 2016). And while it is evident to this Court that Mr. Gabaldon caused the spoliation of relevant evidence, it is less evident that the spoliation occurred in bad faith. Mr. Gabaldon claims that he returned these items to the Bandidos in order to leave the Club and pursue a more Christian path in life. There is no evidence on the record to the contrary. To justify the sanctions requested here—an adverse inference jury instruction or dismissal of the claim—State Defendants must show this was the result of bad faith, not just negligence. And while Mr. Gabaldon could have taken additional steps to retain this evidence, like communicating his need to return to the items to the Bandidos with State Defendants in order to ensure proper discovery before the items were returned, the Court cannot infer malicious intent from the facts at hand.

But while the Court cannot impose State Defendants' requested sanctions without a finding of bad faith, Mr. Gabaldon's negligence still warrants an imposition of lesser sanctions. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149-50 (10th Cir. 2009). Mr. Gabaldon was on notice that these items should have been preserved and State Defendants are prejudiced by the fact that they are unable to conduct discovery on them. Accordingly, this Court will grant State Defendants motion for sanctions. However, the Court will not impose sanctions at this time but will wait until closer to trial when the Court can better design sanctions that promote accurate fact finding by the

Court or jury. *See U.S. ex rel. Baker v. Cmty. Health Sys., Inc.*, No. 05-cv-279, 2012 WL 12294413, at *3 (D.N.M. Aug. 31, 2012).

### IV.  CONCLUSION

Because this Court finds that Mr. Gabaldon spoliated evidence and that the spoliation was prejudicial to the State Defendants, it will grant State Defendants' motion for sanctions. However, it will wait to impose specific sanctions until closer to trial.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that State Defendants' *Motion for Sanctions for Spoliation of Evidence* **(ECF No. 43)** is **GRANTED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**