IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CRAIG GABALDON,**

    **Plaintiff,**

v.                                                            CV. No. 23-00035 JCH/SCY

**NEW MEXICO STATE POLICE,**
**KEVIN SMITH,**
**In his individual capacity,**
**KURTIS WARD,**
**In his individual capacity, and**
**JOHN DOES 1 through 4,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the following motions filed by the New Mexico State Police (the "NMSP"), Kevin Smith, and Kurtis Ward (collectively, "State Defendants")[1]: (1) *State Defendants' Motion for Partial Summary Judgment on Plaintiff's Defamation and First Amendment Claims* **(ECF No. 45)**; (2) *State Defendants' Motion for Partial Summary Judgment on Plaintiff's Malicious Prosecution Claim* **(ECF No. 46)**; (3) *State Defendants' Motion for Partial Summary Judgment on Plaintiff's Assault/Battery, Intentional Infliction of Emotional Distress, and State Law Punitive Damages Claims* **(ECF No. 47)**; and (4) *State Defendants' Motion for Partial Summary Judgment on Plaintiff's Negligent Training and Supervision Claims* **(ECF No. 48)**.

---

[1] Defendants John Does 1 through 4 were dismissed from this case pursuant to the Court's Order Adopting Findings and Recommendation (ECF No. 20).

State Defendants' aforementioned motions contest Plaintiff Craig Gabaldon's following federal claims: (1) First Amendment expressive conduct and retaliatory arrest; (2) defamation; (3) malicious prosecution; (4) negligent training and supervision; (5) punitive damages; and (6) a Fourteenth Amendment claim.[2] The motions also contest Mr. Gabaldon's following state law claims: (1) defamation; (2) malicious prosecution; (3) negligent training and supervision; (4) assault and battery; (5) intentional infliction of emotional distress; and (6) punitive damages.

In response to State Defendants' various motions for summary judgment, Mr. Gabaldon withdrew his negligent training and defamation claims brought under Section 1983 and his defamation and intentional infliction of emotional distress claims brought under state law. He also withdrew his claim for punitive damages under state law. The Court, having considered the motions, briefs, arguments, applicable law, and otherwise being fully advised, concludes that the motions for summary judgment pertaining to the remaining federal law claims should be granted. The Court further uses its discretion to decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for the reasons stated herein and remands the remaining state law claims to the Second Judicial District Court, Bernalillo County, State of New Mexico.

I.     **FACTUAL BACKGROUND**[3]

---

[2] Mr. Gabaldon does not specify in his complaint whether he brings his defamation, malicious prosecution, and negligent training and supervision claims under Section 1983 or New Mexico state law. *See* Complaint ¶¶40, 51-55, ECF No. 1-1. State Defendants address the claims under both federal and state law, so the Court will do the same.

[3] In the Memorandum Opinion and Order dated June 25, 2024, this Court concluded that Mr. Gabaldon's affidavit filed as an exhibit to his response to State Defendants' Motion for Partial Summary Judgment on Plaintiff's Fourth, Fifth, and Fourteenth Amendment Claims was a sham affidavit and would be excluded from this Court's consideration. *See* Mem. Op. & Order 8, ECF No. 85. The Court incorporates by reference that decision here and does not consider Mr. Gabaldon's affidavit in deciding these motions for summary judgment. Consequently, the facts set forth in this section are drawn from the undisputed evidence; the video recordings; and, for the facts not conclusively established in the video recording, those facts that are supported by admissible evidence and construed in the light most favorable to Mr. Gabaldon, the nonmoving party.

On January 29, 2021, NMSP Officer Kevin Smith observed Mr. Gabaldon riding his motorcycle northbound on Carlisle Boulevard in Albuquerque shortly after midnight. *See* Dashcam Video 00:42-00:52. Officer Smith observed Mr. Gabaldon make a wide right turn onto eastbound Candelaria Road, crossing the double yellow lines into the westbound lane before correcting back into the proper lane. *See* Defs.' Undisputed Material Facts ("UMF") ¶¶ 3-4, ECF No. 44. Officer Smith then noticed Mr. Gabaldon rapidly accelerate on Candelaria Road and used his radar to confirm that Mr. Gabaldon was traveling 78 miles-per-hour in a 35 mile-per-hour zone. *Id.* at ¶ 5. Officer Smith caught up to Mr. Gabaldon after Mr. Gabaldon made a right turn onto Adams Street. *See* Dashcam Video 00:53-1:51. Officer Smith then turned on his vehicle's emergency lights. *Id.* Mr. Gabaldon proceeded to turn into a driveway, dismount his motorcycle, and walk towards the residence. *Id.* Officer Smith exited his vehicle and verbally commanded Mr. Gabaldon to stop. *See* Lapel Video 1:55-2:23. Mr. Gabaldon complied. *Id.* As Mr. Gabaldon walked back towards Officer Smith, Officer Smith observed him remove his gear, including a jacket, and throw it in the open window of a vehicle parked next to the motorcycle. *Id.* Officer Smith asked Mr. Gabaldon several times to move away from the vehicle and residence with him so the two could talk; Mr. Gabaldon did not respond. *See id.* at 2:27-3:38. Officer Smith informed Mr. Gabaldon that he observed Mr. Gabaldon speeding and driving into the wrong lane. *Id.* Officer Smith asked Mr. Gabaldon for his name and Mr. Gabaldon refused to share. *Id.* During these interactions, Officer Smith observed that Mr. Gabaldon smelled of alcohol, had bloodshot eyes, and had slurred speech. *See* Defs.' UMF ¶ 29. Officer Smith then asked Mr. Gabaldon if he would submit to a field sobriety test but Mr. Gabaldon refused. Lapel Video 4:10-5:10.

Based on these observations and Mr. Gabaldon's conduct, Officer Smith attempted to arrest Mr. Gabaldon for driving under the influence. *Id.*; Defs.' UMF ¶ 32. Mr. Gabaldon resisted arrest

by grabbing onto the vehicle parked in the driveway. *See* Lapel Video 4:10-5:10. Finally, Officer Smith, with the help of Lieutenant Kurtis Ward[4] who had arrived on the scene, secured Mr. Gabaldon on the ground. *See id.* Mr. Gabaldon was placed under arrest for allegedly driving under the influence of alcohol, in violation of NMSA 1978, § 66-8-102(D). *See* Defs.' UMF ¶ 41.

Mr. Gabaldon filed a complaint in state court on April 26, 2022. *See generally* Complaint, ECF No. 1-1. State Defendants removed the case to this Court on January 12, 2023. *See* Notice of Removal 1, ECF No. 1.

## II.   LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A movant for summary judgment may be entitled to summary judgment if they show that the nonmovant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has done so, the burden shifts to the nonmoving party to designate specific facts that establish the existence of a genuine issue for trial. *See id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

In reviewing a summary judgment motion based on qualified immunity, as is the case in several claims here, the court views the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) (citation omitted). "Because of the underlying purposes of qualified immunity, [the Tenth Circuit] review[s] summary judgment orders deciding qualified immunity questions differently from other summary judgment

---

[4] At the time of Mr. Gabaldon's arrest, Lieutenant Ward was a sergeant. *See* Defs.' UMF ¶ 12 n.4. For purposes of this decision, the Court will refer to Lieutenant Ward by his current title.

decisions." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). That burden requires a plaintiff to show that the state official "(1) [] violated a federal statutory or constitutional right, and (2) the unlawfulness of [the official's] conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (internal quotations and citations omitted); *Pauly v. White*, 874 F.3d 1197, 1214 (10th Cir. 2017). "[The district court] may decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016).

### III. ANALYSIS OF FEDERAL CLAIMS

#### A. First Amendment Claims

##### 1. Expressive Conduct

The First Amendment has long been recognized to protect a wide variety of conduct that communicates ideas, including "symbolic speech." *See Texas v. Johnson*, 491 U.S. 397, 404 (1989); *Bivens By & Through Green v. Albuquerque Pub. Sch.*, 899 F. Supp. 556, 559 (D.N.M. 1995). But the types of conduct the First Amendment protects are not without limits. *See United States v. O'Brien*, 391 U.S. 367, 376 (1968). The First Amendment does not protect all conduct intended to be expressive by the person engaging in it; rather, the conduct must be "inherently expressive." *Rumsfeld v. F. for Acad. & Inst'l Rts., Inc.*, 547 U.S. 47, 66-67 (2006). A two-part test must be met for nonverbal conduct to be considered "expressive conduct" and worthy of First

Amendment protection. *Johnson*, 491 U.S. at 404. First, the actor must intend to convey a particularized message with their conduct, and second, there must be a great likelihood that others would understand the message. *Id.*

Here, Mr. Gabaldon argues that Officer Smith arrested him because he was wearing a jacket with patches on it from the Bandidos Motorcycle Club ("Bandidos"), in violation of his First Amendment right to expressive conduct. *See* Pl.'s Resp. 4, ECF No. 58. State Defendants argue that they are entitled to qualified immunity because Mr. Gabaldon did not provide specific facts showing that his wearing of the Bandidos paraphernalia is expressive conduct. *See* Defs.' Mot. for Summ. J. 14, ECF No. 45. In support of their argument, State Defendants cite to several points in Mr. Gabaldon's deposition where he states that the Bandidos patches he was wearing do not express anything beyond the motorcycle club that he is affiliated with. *See* Dep. of Craig Gabaldon 131:15-16, 21-22, ECF No. 67-1. In response, Mr. Gabaldon does not provide any facts to support his claim that his wearing of the Bandidos patches was expressive conduct—he simply alleges a new claim of retaliatory arrest and argues that State Defendants failed to show that Mr. Gabaldon's display of his Bandidos patches was not expressive conduct. *See generally* Pl.'s Resp., ECF No. 58.

This Court agrees with State Defendants. This Court previously found that the traffic stop and arrest at issue in this case were both constitutional because Officer Smith had reasonable suspicion to stop Mr. Gabaldon and probable cause to arrest him. *See* Mem. Op. & Order 13-17, ECF No. 85. And "probable cause speaks to the objective reasonableness of an arrest." *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011)). Mr. Gabaldon failed to respond to State Defendants' motion for summary judgment with any facts to support the claim that wearing Bandidos patches on his jacket is expressive conduct. He incorrectly

asserts that it is State Defendants' burden to show that they did not violate his First Amendment right to expressive conduct. However, "it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies." *See Clark v. Comm. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). Accordingly, because this Court found that the traffic stop and arrest were constitutional, and because Mr. Gabaldon offers no evidence to show that State Defendants violated his First Amendment right, State Defendants are entitled to summary judgment and qualified immunity on this claim.

### 2. Retaliatory Arrest

As an initial matter, this Court must address the fact that Mr. Gabaldon raises his claim for retaliatory arrest for the first time in his response to State Defendants' motion for summary judgment. *See generally* Pl.'s Resp., ECF No. 58; Complaint, ECF No. 1-1. As a general rule, "a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover," as long as the late shift does not prejudice the other party in maintaining their defense. *See Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991). When a party raises a new claim in response to a motion for summary judgment, a court treats the filing as a request to amend the complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. *See Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998). Thus, courts must determine whether the proposed amendment would be futile, an analysis that is functionally equivalent to whether the complaint would be dismissed for failure to state a claim. *See Adams v. C3 Pipeline Const. Inc.*, 30 F.4th 943, 972 (10th Cir. 2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In ruling on a motion to dismiss for failure to state a claim, all well-pleaded facts, as distinguished from conclusory allegations, must be taken as true, and the court must liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) (quotations and alteration omitted). Because Mr. Gabaldon did not submit a proposed amended complaint, the Court looks to other materials on the record in addition to the original complaint to determine whether an amended complaint could state a claim for retaliatory arrest. *See Adams*, 30 F.4th at 975-76.

To make out a claim for retaliatory arrest, a plaintiff must show that (1) they were engaged in a constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the plaintiff's exercise of the constitutionally protected activity substantially motivated the defendant's adverse action. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007); *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1127 (D. Colo. 2014). To prove the third element of a First Amendment retaliation claim, "a plaintiff must show 'but-for' causation—meaning the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Bustillos v. City of Artesia*, 98 F.4th 1022, 1036 (10th Cir. 2024).

Here, amendment would be futile. Mr. Gabaldon alleges no facts in his original complaint that support a claim of retaliatory arrest based on his expressive conduct. Mr. Gabaldon does not allege that he was engaged in expressive conduct by wearing a jacket with Bandidos patches on it. To be sure, he does not mention the Bandidos patches anywhere in his complaint. Nor does he

allege any facts relating to Officer Smith and Lieutenant Ward's state of minds at the time of his arrest.

Examination of the other materials on the record does not help Mr. Gabaldon's case. This Court has found that both the traffic stop and arrest were constitutional. *See* Mem. Op. & Order 13-17, ECF No. 85. And nowhere on the record does Mr. Gabaldon offer facts that lead to the conclusion that the Bandidos patches caused Officer Smith to stop and arrest Mr. Gabaldon, facts critical in satisfying the third *Van Deelen* factor. State Defendants assert that Officer Smith was not even able to see the patches on Mr. Gabaldon's jacket before initiating the stop; Mr. Gabaldon offers no evidence to dispute this claim. *See* Defs.' Reply 6, ECF No. 67. Accordingly, the Court finds that Mr. Gabaldon has not pleaded sufficient factual matter to support a claim for retaliation and his proposed amendment is futile.

Nevertheless, even if this Court accepted Mr. Gabaldon's proposed amendment, his claim for retaliatory arrest would still fail. The presence of probable cause is a bar to a First Amendment retaliation claim, and this Court has found that Officer Smith had probable cause to arrest Mr. Gabaldon. *See* Mem. Op. & Order 15-17, ECF No. 85; *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). Accordingly, State Defendants are entitled to summary judgment and qualified immunity on this claim.

### 3. Fourteenth Amendment

Mr. Gabaldon's complaint alleges, without any further information or explanation, that State Defendants violated his Fourteenth Amendment rights. *See* Complaint ¶ 40, ECF No. 1-1. In his response to State Defendants' Motion for Summary Judgment on Plaintiff's Fourth, Fifth, and Fourteenth Amendment Claims, Mr. Gabaldon noted that his invocation of the Fourteenth Amendment applies to his alleged loss of First Amendment freedoms because of State Defendants'

retaliatory arrest based on his expressive conduct. *See* Pl.'s Resp. 15, ECF No. 59. Mr. Gabaldon does not expand on the alleged Fourteenth Amendment violation anywhere else in his briefing.

This Court has found that Mr. Gabaldon's First Amendment rights were not violated. *See supra* Section III.A. And construing this pleading liberally and viewing all facts in a light most favorable to Mr. Gabaldon, this Court finds that Mr. Gabaldon has not set forth any facts in support of a claim that he was denied due process or equal protection. Accordingly, Mr. Gabaldon's Fourteenth Amendment claim will be dismissed.

### B. Malicious Prosecution Claim

Next, the Court turns to Mr. Gabaldon's claim for malicious prosecution. A successful Section 1983 claim for malicious prosecution requires five elements, with Mr. Gabaldon's claim turning on the third: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) *no probable cause supported the arrest, confinement, or prosecution*; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages." *Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023) (emphasis added) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)). Mr. Gabaldon asserts that he was maliciously prosecuted by State Defendants because he was arrested for his "expression of support and affiliation with the Bandidos." *See* Pl.'s Resp. 3, ECF No. 60; Complaint ¶ 40, ECF No. 1-1. Mr. Gabaldon claims Officer Smith did not have probable cause to arrest him because he did not commit any traffic violations and did not appear impaired. *See* Pl.'s Resp. 3, ECF No. 60. However, this Court previously found that Officer Smith had probable cause to arrest Mr. Gabaldon. *See* Mem. Op. & Order 15-17, ECF No. 85. Accordingly, because Mr. Gabaldon cannot show that the arrest was not supported by probable cause as required for a malicious prosecution claim, State Defendants are entitled to summary judgment.

10

### C. Negligent Supervision Claim

Finally, Mr. Gabaldon brings a claim for negligent supervision under Section 1983, alleging that the NMSP was negligent in supervising its officers by allowing them to use an unsanctioned take-down move when arresting suspects. *See* Complaint ¶¶ 51-55, ECF No. 1-1; Pl.'s Resp. 5, ECF No. 62. To hold a municipality liable under Section 1983 for negligent supervision, a plaintiff must first establish that a municipal employee committed a constitutional violation. *See Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154 (10th Cir. 2001); *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1187 (10th Cir. 2020) ("[A] claim under § 1983 against either an individual actor or a municipality cannot survive a determination that there has been no constitutional violation."). "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized [unconstitutional conduct] is quite beside the point." *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1233 (10th Cir. 2024) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). If a plaintiff establishes that a municipal employee committed a constitutional violation, they then must show that the municipality followed a policy, custom, or practice that was unconstitutional, and this policy, custom, or practice must have been the cause and moving force behind the alleged deprivation of the plaintiff's constitutional rights. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404-05 (1997).

This Court finds that Mr. Gabaldon's claim for negligent supervision fails at the outset because the Court has not found, and Mr. Gabaldon makes no further showing here, that Officer Smith or Lieutenant Ward violated any of Mr. Gabaldon's constitutional rights. To be sure, even if the Court found that Officer Smith or Lieutenant Ward violated Mr. Gabaldon's constitutional rights, Mr. Gabaldon provides no evidence of an unconstitutional policy, custom, or practice that

11

the NMSP followed relating to the allegedly unsanctioned take-down move, as is required to make out a claim of negligent supervision against the NMSP. *See id.* Accordingly, State Defendants are entitled to summary judgment.

### D.  Punitive Damages Claim

Mr. Gabaldon lists punitive damages as the final cause of action in his complaint. *See* Complaint ¶¶ 61-62, ECF No. 1-1. However, this Court notes that punitive damages are not a separate cause of action; they rely on a finding of liability on a different claim. *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1271 (D.N.M. 2010). Because all of Mr. Gabaldon's federal claims have been dismissed, Mr. Gabaldon's claim for punitive damages under Section 1983 cannot stand alone and will be dismissed.

## IV.   STATE LAW CLAIMS

This Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court "may decline to exercise supplemental jurisdiction over a claim" under § 1367(a) if the Court "has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998)). The Supreme Court recognizes that remand is ordinarily recommended:

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82

> L.Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (footnote omitted). The Supreme Court explained that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The Court has discretion to decide sua sponte whether to exercise supplemental jurisdiction over remaining state law claims. *See Ames v. Miller*, 247 Fed. Appx. 131, 133-35 (10th Cir. 2007) (unpublished) (affirming court's sua sponte decisions to dismiss and to decline supplemental jurisdiction over state law claims); *Porter v. Williams*, 436 F.3d 917, 920 (8th Cir. 2006) (stating that court could decide sua sponte whether to exercise supplemental jurisdiction); *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 596 F.3d 1313, 1327-28 (11th Cir. 2010) (affirming sua sponte dismissal of state law claims after dismissal of all federal claims).

This Court has dismissed all of Mr. Gabaldon's federal claims. *See supra* Section III; Mem. Op. & Order, ECF No. 85 (granting summary judgment on Plaintiff's Fourth and Fifth Amendment claims). Having considered the balance of factors—judicial economy, convenience, fairness, and comity—the Court concludes that the remaining claims "properly belong[] in state court." *Carnegie-Mellon Univ.*, 484 U.S. at 350. The Court will therefore remand the remaining state law claims to state court.

**IT IS THEREFORE ORDERED** that:

1. State Defendants' Motion for Partial Summary Judgment on Plaintiff's Defamation and First Amendment Claims **(ECF No. 45)** is **GRANTED** as follows:

    a. Defendants' request for summary judgment on Plaintiff's First Amendment claims is **GRANTED** based on qualified immunity and these claims are **DISMISSED WITH PREJUDICE**; and

    b. Plaintiff's federal and state law defamation claims have been withdrawn and are therefore **DISMISSED WITHOUT PREJUDICE**;

2. Plaintiff's Fourteenth Amendment claim is **DISMISSED WITH PREJUDICE**;

3. State Defendants' Motion for Partial Summary Judgment on Plaintiff's Malicious Prosecution Claim **(ECF No. 46)** is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Defendants' request for summary judgment on Plaintiff's malicious prosecution claim pursuant to Section 1983 is **GRANTED** and this claim is **DISMISSED WITH PREJUDICE**; and

    b. Plaintiff's malicious prosecution claim based on state law will be **REMANDED** to the Second Judicial District Court, Bernalillo County, State of New Mexico;

4. State Defendants' Motion for Partial Summary Judgment on Plaintiff's Assault/Battery, Intentional Infliction of Emotional Distress, and State Law Punitive Damages Claims **(ECF No. 47)** is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Plaintiff's assault/battery claim based on state law will be **REMANDED** to the Second Judicial District Court, Bernalillo County, State of New Mexico;

    b. Plaintiff's intentional infliction of emotional distress and state law punitive damages claims have been withdrawn and are therefore **DISMISSED WITHOUT PREJUDICE**; and

    c. Plaintiff's claim for punitive damages pursuant to Section 1983 is **DISMISSED WITHOUT PREJUDICE**;

5. State Defendants' Motion for Summary Judgment on Plaintiff's Negligent Training and Supervision Claims **(ECF No. 48)** is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Defendants' request for summary judgment on Plaintiff's negligent supervision claim pursuant to Section 1983 is **GRANTED** and this claim is **DISMISSED WITH PREJUDICE**;

    b. Plaintiff's negligent training claim pursuant to Section 1983 has been withdrawn and is **DISMISSED WITHOUT PREJUDICE**; and

    c. Plaintiff's negligent training and supervision claims brought pursuant to state law will be **REMANDED** to the Second Judicial District Court, Bernalillo County, State of New Mexico.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**